MARCUARD v. UNITED STATES. See Case No. 3,097.

MARCY v. OHIO. See Case No. 9,457.

MARCY (SUMNER v.). See Case No. 13,609.

## Case No. 9,063.
### MARCY v. TROTTER.
[3 App. Com'r Pat. 303.]

Circuit Court, District of Columbia. April 16, 1860.

PATENTS—SECOND INVENTOR — DELAY—ABANDONMENT—APPLICATION—SCOPE OF COMMISSIONER'S EXAMINATION.

[1. A first inventor's delay to apply for a patent for eight years after the second inventor has secured one bars him from thereafter making application.]

[2. Upon application for the issue of a patent, the commissioner should decide not only questions of law, but also of fact, including abandonment or neglect.]

[Application by E. E. Marcy for letters patent for an improved process for curing India

rubber. An interference with the patent of John E. Trotter was declared, and the commissioner thereafter denied Marcy's application. Applicant appeals.]

DUNLOP, Chief Judge. This is an appeal to me, by Dr. Marcy, from the decision of the commissioner of patents, dissolving the interference heretofore declared by the office, between the parties above named, and refusing a patent to Dr. Marcy, for improvement in processes for curing India rubber. There is no dispute, that the invention claimed by the parties litigant are the same, and identical.

A great many questions of law and fact, have been presented and discussed, which it would be vain to consider and determine, because the solution of them would have no influence, on the judgment I am to render. I assume argumenti gratia, and only for the sake of the argument, that Dr. Marcy was the first and original inventor, and the question remains, has he forfeited his right to a patent by failing to apply for it in a reasonable time? The same invention was patented to Trotter in December, 1850, more than eight years before Marcy presented himself to the patent office, which was first done on the 6th July, 1859. Dr. Marcy resided in the same city with Trotter, who introduced his invention into public use there, of which Dr. Marcy had no doubt actual notice; at all events, he had constructive legal notice, because all citizens are bound to know the doings of the patent office, to which they all have access, and which is the legal public repository of the muniments of title in relation to all inventions.

The policy of the patent laws favors diligence and condemns neglect. It is the duty of an inventor without delay to patent his perfected invention. He has no right to use it himself or permit others to use it, as in this case, for eight years, and then expect a monopoly from the public, for fourteen years more.

A main inducement and consideration, with the public, in granting the monopoly, is the right of the public to have immediate knowledge and restricted use, of the perfected invention, and the free and unrestricted use of it, at the end of fourteen years. Dr. Marcy, has by his neglect and laches, permitted Trotter to enjoy a monopoly of the invention, for more than eight years, and now claims for himself the same monopoly for fourteen years more. This subject of laches, in inventors, has been several times before the supreme court of the United States, and has always received the condemnation of that high tribunal, and the law must be considered conclusively settled in that court.

In Pennock v. Dialogue, 2 Pet. [27 U. S.] 1, they say: "If an inventor should be permitted to hold back, from the knowledge of the public, the secrets of his invention, it would materially retard the progress of science and the useful arts, and give a premium to those who would be least prompt to communicate their discoveries"; and in Shaw v. Cooper, 7 Pet. [32 U. S.] 523, the same court says: "Whatever may be the intention of the inventor, if he suffers his invention to go into public use through any means, whatsoever, without an immediate assertion of his right, he is not entitled to a patent, nor will a patent obtained under such circumstances protect his right." If Trotter pirated the invention, as Dr. Marcy insists, no more stringent call could exist for the prompt action of the appellant.

The doctrine of the supreme court in the two cases above cited has been reasserted and reaffirmed by the same court, in the late case of Kendall v. Winsor, 21 How. [62 U. S.] 329. In this last case they say: "It is the unquestionable right of every inventor to confer gratuitously the benefit of his ingenuity on the public, and this he may do, either by express declaration, or by conduct equally significant with language, such, for instance, as an acquiescence with full knowledge in the use of his invention by others; or he may forfeit his rights as an inventor by a wilful, or negligent postponement of his claims, or by an attempt to withhold the benefit of his improvement from the public until a similar or the same improvement should have been made and introduced by others"; and again they say: "These (referring to the cases of Pennock v. Dialogue and of Shaw v. Cooper [supra]) may be regarded as leading cases upon the questions of the abrogation or relinquishment of patent privileges, as resulting from avowed intention, from abandonment or neglect or from use known and assented to."

If Dr. Marcy was misled by the opinion of Judge Grier, to which he refers as an excuse for his delay in presenting his claims to the patent office, the doctor himself ought to suffer, and not the public. He knew or ought to have known that the office treated the invention as patentable, and had actually granted a patent to Trotter, on the 3rd December, 1850. The effect of now giving him a patent for fourteen years more would be creating a monopoly against the public for twenty-two years, instead of fourteen, which the office has no right by law to do.

The 2nd reason of appeal denies the jurisdiction of the commissioner, to decide the question of abandonment or neglect. That question, in a suit for infringement of a patent right, is no doubt a question of fact for the jury, and not for the court, but on an application to the commissioner for the issue of a patent, it is his duty to decide all questions, both of law and fact, which go to establish the right, or the absence of right, in the applicant, to the patent which he seeks.

The 1st, 3rd and 4th reasons of appeal are hereinbefore treated of and answered.

I affirm the judgment of the commissioner, and return to him all the papers with this my opinion and judgment, this 16th April, 1860.